ORIGINAL

FILED
DEC 28 2006
U.S. COURT OF FEDERAL CLAIMS

Curtis G. Berkey (D.C. Bar No. 288647)
Scott W. Williams (CA Bar No. 097966)
ALEXANDER, BERKEY, WILLIAMS & WEATHERS LLP
2030 Addison Street, Suite 410
Berkeley, CA 94704
Tel: (510) 548-7070
Fax: (510) 548-7080
E-mail: cberkey@abwwlaw.com
E-mail: swilliams@abwwlaw.com

Attorneys for Plaintiffs

UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| THE HAUDENOSAUNEE; THE ONONDAGA NATION,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES<br><br>Defendant. | Case No.<br><br>06-909 L<br><br>COMPLAINT FOR DAMAGES |

**Introduction**

1. This is an action for money damages, with interest, arising from the failure of the United States to properly account for its performance of an obligation to provide $4,500 annually in perpetuity for the benefit of the Haudenosaunee, or Six Nations Confederacy, and the Onondaga Nation under Article VI of the Treaty of Canandaigua of 1794, 7 Stat. 44. The Treaty of Canandaigua is the principal legal agreement which defines the relationship between the Haudenosaunee and the United States, and the treaty and its obligations are in effect and fully

enforceable today.

2. The determination of damages arising from the claims asserted in this action will depend on a complete and accurate accounting by the United States, which has not yet been provided to the Plaintiffs. The allegations herein are based on information currently available to the Plaintiffs. The Plaintiffs have filed an action in the United States District Court for the District of Columbia against the Secretary of the Interior, the Secretary of the Treasury and the Special Trustee for American Indians to compel an accounting that is lawfully required under the Treaty of Canandaigua and applicable federal statutes as supplemented by common law fiduciary principles. *Haudenosaunee and Onondaga Nation v. Kempthorne, et al*, Civil Action No. ____, (D.C. D.C, filed December 29, 2006). That action also seeks an injunction ordering reformation of federal accounting procedures and practices with regard to the performance of the federal government's obligations under the Treaty of Canandaigua. The precise scope of the money damages claims against the United States cannot be determined until that accounting is provided. The United States has exclusive possession and control of the information necessary for the Plaintiffs to more precisely allege the damages arising from these claims. Plaintiffs intend to amend this complaint as necessary following the accounting which they expect to be ordered by the District Court. Plaintiffs file this action now in order to preserve their claims against the running of the statute of limitations.

**Jurisdiction**

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1491 (Tucker Act) in that this is a case founded on the United States Constitution (5th Amendment), Acts of Congress (numerous appropriation acts, 25 U.S.C. § 161 and related

statutes, and the Trust Fund Management Reform Act of 1994, 25 U.S.C. §§ 4001 et seq.) and it is a case for unliquidated damages "not sounding in tort" (federal fiduciary's duty to account under Indian treaties). This Court also has jurisdiction over this action under 28 U.S.C. § 1505 (Indian Tucker Act) in that Plaintiffs in part assert claims accruing after August 13, 1946; the Haudenosaunee is an identifiable group of American Indians and the Onondaga Nation is a federally-recognized Indian tribe; and the claims arise under the Constitution (5th Amendment), the laws of the United States, as noted above; and the treaties of the United States (Treaty of Canandaigua of 1794, 7 Stat. 44).

**Parties**

4. Plaintiff Haudenosaunee is a confederacy composed originally of five sovereign Indian nations: the Onondaga Nation, Mohawk Nation, Oneida Nation, Cayuga Nation, and Seneca Nation. The sovereign Tuscarora Nation joined the Haudenosaunee in approximately 1712. The Haudenosaunee is called in English the "Six Nations Iroquois Confederacy." The seat or central Council Fire of the Confederacy is at Onondaga. The Onondagas are the firekeepers of the Haudenosaunee. The Haudenosaunee entered into three treaties recognized as valid by the United States: the Treaty of Fort Stanwix of 1784, the Treaty of Fort Harmar of 1789, 7 Stat. 33, and the Treaty of Canandaigua of 1794, 7 Stat. 44. The obligations of the United States under Article VI of the Treaty of Canandaigua, as well as the other articles, are owed to the Haudenosaunee and its constituent nations. This action is brought by authority of the Grand Council of Chiefs of the Haudenosaunee. The Haudenosaunee is an "identifiable group of American Indians" within the meaning of 28 U.S.C. § 1505.

5. Plaintiff Onondaga Nation is an Indian nation recognized by the United States

through the Secretary of the Interior. The citizens of the Onondaga Nation reside principally on its territory or "reservation" south of Nedrow, New York. The Nation brings this action by authority of the Onondaga Council of Chiefs, the sole government of the Onondaga Nation. The government of the Onondaga Nation is recognized by the United States through the Secretary of the Interior. The relationship of the Onondaga Nation to the United States has never been terminated. The seat of the Nation is at Onondaga, south of Nedrow, New York. The Onondaga Nation sues on its own behalf and on behalf of the Haudenosaunee.

6. Defendant United States is a body politic existing pursuant to the Constitution of the United States of America. The United States has assumed certain fiduciary, statutory and treaty duties to provide benefits to Plaintiffs, and the United States is accountable in money damages to the Plaintiffs for its failure to carry out those responsibilities in accordance with applicable law.

**Statement of Facts**

7. On November 11, 1794, the Six Nations or Haudenosaunee entered into a treaty with the United States to establish a perpetual peace and friendship between the nations. Treaty of Canandaigua of 1794, 7 Stat. 44, Article I. The Treaty, one of the first made by the United States with Indian nations, was approved by Congress and proclaimed effective by President George Washington on January 21, 1795. In the Treaty, the United States acknowledged the territorial boundaries of the member nations of the Six Nations, and both parties agreed to maintain a relationship of permanent peace and friendship. The Treaty remains in effect and its terms are fully enforceable today. The Haudenosaunee has faithfully adhered to its promises and obligations under the Treaty.

8. Article VI of the Treaty of Canandaigua provides in relevant part:

> In consideration of the peace and friendship hereby established, and of the engagements entered into by the Six Nations; and because the United States desire, with humanity and kindness, to contribute to their comfortable support; and to render the peace and friendship hereby established strong and perpetual; the United States now deliver to the Six Nations, . . . a quantity of goods of the value of ten thousand dollars. And for the same considerations, and with a view to promote the future welfare of the Six Nations, . . . the United States will add the sum of three thousand dollars to the one thousand five hundred dollars, heretofore allowed them by an article ratified by the President on the twenty-third day of April, 1792; making the whole, four thousand five hundred dollars; which shall be expended yearly forever, in purchasing clothing, domestic animals, implements of husbandry, and other utensils suited to their circumstances, and in compensating useful artificers, who shall reside with or near them, and be employed for their benefit. The immediate application of the whole annual allowance now stipulated, to be made by the superintendent appointed by the President for the affairs of the Six Nations, . . . .

7 Stat. 44, 46. Article VI obligates the United States, as consideration for the peace and friendship granted by the Haudenosaunee, to expend $4,500 each year forever for the benefit of the Six Nations for the purposes specified in the Treaty. The obligation is perpetual in duration and unconditional.

9. Upon information and belief, during most of the years in the period from 1798 to 1832, Congress appropriated $15,000 "[f]or the payment of annuities to the Six Nations, Chickasaws, Cherokees and Creeks." Act of June 12, 1798, 1 Stat.564. The appropriation did not specify the amount that was to be dedicated for the exclusive benefit of the Six Nations separately.

10. Upon information and belief, from 1832 to 1872, Congress periodically appropriated $4,500 to the Six Nations "f[or permanent annuity, stipulated in the sixth article of the treaty of eleventh November, seventeen hundred and ninety-four . . . ." *See, e.g.,* Act of July

29, 1848, 9 Stat. 252. Upon information and belief, the appropriations were not made each and every year.

11. Upon information and belief, beginning in 1872, Congress appropriated $4,500 for the Six Nations "[f]or permanent annuity in clothing and other useful articles, per sixth article treaty of November seventeenth, seventeen hundred and ninety-four. . . ." Act of May 29, 1872, 17 Stat. 165. Upon information and belief, such appropriations continued for most years until 1951.

12. In 1951, Congress appropriated "such sums as may be necessary after June 1, 1951" from "any money in the Treasury not otherwise appropriated" for the purpose of "[f]ulfilling treaties with the Senecas and the Six Nations of New York, Choctaws and Pawnees of Oklahoma, and payment to Indians of the Sioux Reservations. . . ." Act of August 31, 1951, 65 Stat. 254. The Act further provided that the Treasury appropriations were "to be expended as provided by law." *Id.* Absent an accounting, it is not known how much, if any, of these appropriations were actually paid to or for the benefit of the Plaintiffs.

13. Upon information and belief, Congress has not since 1951 made any appropriation to the Six Nations specifically for the purpose of fulfilling Article VI of the Treaty of Canandaigua. Plaintiffs do not have information regarding the source or amount of treaty payments or deliveries of goods until recent decades.

14. Today, Plaintiff Onondaga Nation, as the firekeepers of the Six Nations or Haudenosaunee, receives annually from the Bureau of Indian Affairs a piece of cloth, which represents partial fulfillment of the obligations of the United States imposed by Article VI of the Treaty of Canandaigua. Upon information and belief, at some unknown time, the United States

unilaterally transmuted its Article VI obligation to provide payments or property valued at $4,500 into the delivery of treaty cloth to Plaintiff Onondaga Nation. The date and time at which the United States began the practice of providing Canandaigua Treaty cloth are unknown to the Plaintiffs, because such information is within the exclusive control and custody of officials of the United States.

15. The United States has not fully and accurately accounted for the appropriations, disbursements, deliveries, custodial arrangements, investments, payments and goods distributable pursuant to its obligations to the Six Nations pursuant to Article VI of the Treaty of Canandaigua. For this reason, Plaintiffs are unable to ascertain the nature and scope of the losses they have suffered due to the failure of the Defendant to faithfully carry out its obligations. Upon information and belief, such losses are substantial.

16. In 1970, the Indian Claims Commission ruled that certain individuals purporting to represent the Six Nations were entitled to recover $36,718.42 from the United States due to disallowed credits for disbursements between 1795 and 1952 pursuant to Article VI of the Treaty of Canandaigua. *Six Nations , et al. v. United States*, 23 Ind. Cl. Comm. 376 (1970). Neither the Haudenosaunee nor the Onondaga Nation expressly nor by implication authorized the named individuals to bring the suit, and the Haudenosaunee and the Onondaga Nation strongly objected to the suit once they learned of its existence. Because neither the Haudenosaunee nor the Onondaga Nation authorized the filing and prosecution of the suit, they are not bound by the rulings of the Commission. Neither the Haudenosaunee nor the Onondaga Nation has accepted payment of the award of the Commission. The Commission's ruling did not address the obligation to account for the period 1953 to the present.

17. In 1977, the Six Nations filed suit in United States district court to set aside the Indian Claims Commission award. The suit was dismissed on the ground that the district court did not have power to set aside the Indian Claims Commission award, which had been entered as a final judgment. *Six Nations Confederacy v. Andrus*, 447 F. Supp. 40 (D. D.C. 1977), *aff'd*, 610 F.2d 996 (D.C. Cir. 1980), *cert. denied*, 447 U.S. 922 (1980).

**First Claim for Relief**
**(Breach of Fiduciary Duty)**

18. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-17 above.

19. The Treaty of Canandaigua, the various appropriation acts referenced above, 25 U.S.C. §§ 161, 161a, 162a, and 25 U.S.C. §§ 4001 et seq. impose fiduciary obligations on the United States to appropriate, hold, and disburse funds and/or property valued at $4,500 for the benefit of the Plaintiffs in perpetuity. The Treaty and the statutes mandate the payment of money for the failure of the United States to comply with its fiduciary responsibilities, in order to compensate Plaintiffs for their losses.

20. Upon information and belief, and subject to the facts as shown in a complete and accurate accounting, the United States violated its treaty, statutory and fiduciary obligations to the Haudenosaunee and the Onondaga Nation by making disbursements for purposes other than those specified in the Treaty of Canandaigua; by failing to provide goods and/or money valued at $4,500 per year; by providing inferior goods; by failing to appropriate or provide sufficient goods and/or money each and every year; by making disbursements from Plaintiffs' treaty funds, whether appropriated or not, that were not for the benefit of the Plaintiffs; by failing to deposit

appropriated treaty funds into interest-bearing accounts in a timely manner and as required by 25 U.S.C. § 161 and other applicable statutes; and by failing to obtain the highest possible investment return for such accounts.

21. The Defendant's failure to meet its legal obligations has caused substantial financial loss to the Plaintiffs for which they are entitled to be compensated in the form of money damages.

**Second Claim for Relief**
**(Unconstitutional Taking of Property)**

22. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-21 above.

23. Funds appropriated by Congress to fulfill the United States' obligations under the Treaty of Canandaigua of 1794 are treaty funds belonging to the Plaintiffs. Funds made available for the benefit and use of Plaintiffs pursuant to Congress' standing appropriation in 1951 are treaty funds belonging to Plaintiffs. Funds made available from other federal sources, unknown to Plaintiffs, for the purpose of satisfying the United States' Article VI obligations are treaty funds belonging to Plaintiffs. Such funds are property protected against uncompensated taking by the United States under the Fifth Amendment to the Constitution.

24. Upon information and belief, and subject to the facts as shown in a complete and accurate accounting of the United States' handling of Plaintiffs' treaty funds, the United States' failure to appropriate treaty funds for the benefit of Plaintiffs, and the failure to disburse Plaintiffs' treaty funds in a timely manner and in accordance with the Treaty of Canandaigua are takings of such property in violation of the Fifth Amendment to the Constitution.

25. Plaintiffs are entitled to just compensation for the taking of their treaty funds and to interest on such deficiencies.

**Prayer for Relief**

26. WHEREFORE, Plaintiffs request a money judgment as follows:

a. An award of money damages in an amount sufficient to compensate Plaintiffs for their losses suffered due to Defendant's failure to carry out its duties under the Treaty of Canandaigua, applicable trust funds statutes and fiduciary principles;

b. An award of pre-judgment interest as a component of the just compensation awarded for the taking of Plaintiffs' treaty funds and as otherwise required by law;

c. An award of attorneys fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and other applicable statutes;

d. Such other relief as the Court deems appropriate.

Dated: December 28, 2006

Respectfully submitted,

ALEXANDER, BERKEY, WILLIAMS &
WEATHERS LLP

Curtis G. Berkey (D.C. Bar No. 288647)
Scott W. Williams (CA Bar No. 097966
2030 Addison Street, Suite 401
Berkeley, CA 94704
Tel: (510) 548-7070
Fax: (510) 548-7080
E-mail: cberkey@abwwlaw.com
E-mail: swilliams@abwwlaw.com